UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

_____
                                          )
RICHARD MCLAUGHLIN,                       )
                                          )
        Petitioner,                       )
                                          )
        v.                                )        Civil Action No. 11-11587-JLT
                                          )
JOSEPH D. MACDONALD, JR.,                 )
                                          )
        Respondent.                       )
_____)

**REPORT AND RECOMMENDATION**
[Docket Nos. 1, 31, 40, 42, 44, 46, 47]

August 13, 2013

BOAL, M.J.

On September 7, 2011, Richard McLaughlin ("McLaughlin") petitioned this Court for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, as amended by the Anti-Terrorism and Effective Death Penalty Act of 1996 (AEDPA) (the "Petition"). Docket No. 1. Respondent Joseph D. McDonald, Jr. ("Respondent") filed a motion to dismiss McLaughlin's Petition because it contained claims that had not been exhausted in state court and/or are not cognizable for habeas relief. Docket No. 8. On September 12, 2012, the District Court ordered McLaughlin to delete all claims except Ground Four, regarding admission of certain medical records, or the Court would dismiss the Petition. Docket No. 25. McLaughlin complied with the District Court's order. Docket No. 29. For the following reasons, this Court recommends that the District Court deny the Petition. In addition, this Court recommends that the District Court deny

all of McLaughlin's pending motions.[1]  See Docket Nos. 31, 40, 42, 44, 46, 47.

I.      PROCEDURAL BACKGROUND

        A.      Conviction And Appeals In State Court

        On January 15, 2009, McLaughlin was convicted by a Hingham District Court jury of

operating under the influence of alcohol ("OUI") and negligent operation of a motor vehicle.

Supplemental Answer ("SA") 1, 5.  Following a subsequent jury-waived trial, Judge Thomas S.

Barrett found that McLaughlin's OUI conviction was his third offense.  SA 5.  Judge Barrett

sentenced petitioner to two and a half years in the House of Correction on the OUI third offense

conviction.  SA 1.  On the negligent operation conviction, Judge Barrett sentenced McLaughlin

to a consecutive sentence of two years in the House of Correction, six months to be served with

the balance suspended until January 10, 2014.  SA 1.  Judge Barrett also set conditions of

probation.  SA 1.

        On January 29, 2009, McLaughlin filed a Notice of Appeal.  SA 5.  He also filed a

motion to revise and revoke his sentence.  SA 5.  McLaughlin requested that the motion to revise

and revoke not be marked for a hearing until he requested a hearing.  SA 5.  On appeal,

McLaughlin raised three grounds: (1) the judge committed reversible error in allowing

prejudicial irrelevant hearsay testimony over McLaughlin's objection; (2) McLaughlin was

denied effective assistance of counsel where trial counsel failed to object to the admission of his

medical records; and (3) the admission of a certified copy of McLaughlin's hospital records

violated his confrontation rights.  SA 49-122.  The Massachusetts Appeals Court affirmed

---

        [1] This Court referred this case to the undersigned for full pretrial proceedings, including
dispositive motions, on October 11, 2012.  Docket No. 35.

McLaughlin's convictions on June 13, 2011.  Commonwealth v. McLaughlin, 79 Mass. App. Ct. 670 (2011).  SA 190-200.

On March 16, 2009, McLaughlin, pro se, filed a second motion to revise and revoke his sentence.  SA 5.  McLaughlin requested the "court to reserve [his] rights to a revoke and revise hearing when [he was] ready to act upon the application to use it."  SA 5.

On June 20, 2011, McLaughlin filed a pro se motion to modify his sentences to retro-concurrent.  SA 7-10.  The court denied this motion without a hearing on July 15, 2011.  SA 7.

On June 29, 2011, through counsel, McLaughlin filed an application for further appellate review with the Massachusetts Supreme Judicial Court ("SJC").  SA 202-225.  The application for further appellate review raised the same issues the Massachusetts Appeals Court had considered in June 2011.  SA 205-207.  The SJC denied the application on July 28, 2011. Commonwealth v. McLaughlin, 460 Mass. 1110 (2011) (table).  SA 226.

On July 12, 2011, McLaughlin filed in the Hingham District Court pro se motions for resentencing, to stay his sentence and for a hearing on those matters.  SA 7, 11-28.  The Hingham District Court denied those motions without a hearing on July 15, 2011.  SA 7.

On July 20, 2011, McLaughlin filed a pro se motion for a preliminary injunction to lift his negligent operation sentence and to challenge his incarceration pursuant to 42 U.S.C. § 1983. SA 29-35.  That motion also contains claims that he was denied adequate medical care and claims of mail tampering by correctional employees.

On August 15, 2011, McLaughlin filed a pro se motion for writ of habeas corpus, and a supplement to his motion to revise and revoke in Hingham District Court.  SA 7, 34-46.  The court denied this motion on November 9, 2011.  SA 7.

McLaughlin was released on parole on October 4, 2011.[2]  Docket No. 9 at 3.

B.      McLaughlin's First Petition For A Writ Of Habeas Corpus

On April 28, 2011, McLaughlin filed his first petition for a writ of habeas corpus.

McLaughlin v. Gillen, No. 11-cv-10746-NMG (D. Mass.) (Gorton, J.).  McLaughlin asserted

four grounds in his petition: (1) libel and slander by prison personnel after becoming eligible for

release from incarceration; (2) the U.S. Attorney's Office informed him to file an action in U.S.

District Court concerning mail tampering and stamp theft by prison personnel; (3) failure to be

released from incarceration with a G.P.S. bracelet; and (4) incarceration for twenty-seven

months without due process.  SA 229-42.

On July 8, 2011, the District Court denied McLaughlin's petition and dismissed his

action.  McLaughlin v. Gillen, No. 11-cv-10746-NMG, 2011 WL 2746459 (D. Mass. July 8,

2011) (Gorton, J.).  SA 243-246.  The District Court concluded that McLaughlin had not alleged

any basis for the issuance of a writ of habeas corpus, that McLaughlin had not exhausted his

state court remedies, and that his claims were not cognizable on federal habeas review.  Id. at *2.

C.      The Instant Petition

On September 7, 2011, McLaughlin filed the instant Petition.  Docket No. 1.  The

---

[2] A district judge must entertain section 2254 petitions only for persons "in custody
pursuant to the judgment of a State court."  28 U.S.C. § 2254(a).  The "in custody" determination
is made at the time the section 2254 petition is filed.  Spencer v. Kemna, 523 U.S. 1, 7 (1998).
In addition, parole constitutes a sufficient restraint on a person's liberty to satisfy the "in
custody" requirement of section 2254.  Omosefunmi v. Attorney General, 152 F. Supp. 2d 42, 53
(D. Mass. 2001).  Once the convict's sentence has expired, he may still be able to maintain an
application for a writ of habeas corpus provided that the conviction has some "collateral
consequence" for the convict.  Spencer, 523 U.S. at 7-8.  Accordingly, McLaughlin may
maintain this proceeding notwithstanding the fact that he is apparently no longer incarcerated.
Respondent has not sought dismissal of the Petition on this basis.

Petition raised the following four grounds: (1) denial of medical attention and mental health medication; (2) mail tampering, removing stamps from outgoing mail, returning letters to inmates for more stamps, and opening mail; (3) equal protection, search and seizures, libel by prison personnel in classification hearing decision, due process violation, censorship, and invasion of privacy; and (4) denial of a fair trial because he was unable to confront witnesses whose reports and records were admitted into evidence.  Docket No. 1.

On November 16, 2011, Respondent moved to dismiss the Petition.  Docket No. 8. McLaughlin requested an extension of time until December 23, 2011 to respond to the motion to dismiss, which the Court granted.  Docket No. 12; Electronic Order entered December 9, 2011. However, McLaughlin did not file an opposition to the motion to dismiss.

On December 9, 2011, McLaughlin filed a motion for injunctive relief  "to give relief to Richard McLaughlin from the sentence of Judge Barrett in Hingham District Court."  Docket No. 13.  Respondent filed his opposition to this motion on December 13, 2011.  Docket No. 14.

On June 8, 2012, McLaughlin filed five additional motions: (1) motion for a writ of habeas corpus (Docket No. 16); (2) motion for injunctive relief to give relief from the Boston Retirement Board (Docket No. 17); (3) motion for injunctive relief to give relief from the sentence of Judge Barrett in Hingham District Court (Docket No. 18); (4) motion for injunctive relief seeking reinstatement of his driver's license (Docket No. 19); and (5) motion for a hearing date on his motions for injunctive relief (Docket No. 21).  Respondent filed his opposition to the motions on June 15, 2012.  Docket No. 22.

On August 22, 2012, this Court recommended that the District Court allow Respondent's Motion to Dismiss unless McLaughlin, within twenty (20) days, deleted all of the claims in the

Petition except for the claim concerning the admission of medical records.  If he deleted all of

the claims in the Petition except for the claim regarding the admission of medical records, this

Court recommended that the Court proceed to consider that claim on the merits.  If he did not

delete all of the unexhausted and non-cognizable claims, this Court recommended that the

District Judge enter a Final Judgment dismissing the petition without prejudice to McLaughlin

bringing his non-habeas claims in a civil rights suit brought pursuant to 42 U.S.C. § 1983.

Docket No. 23.  The Court further recommended that the District Judge deny McLaughlin's

remaining motions.  Id.

On September 12, 2012, the District Court adopted this Court's report and

recommendation.  Docket No. 25.  McLaughlin complied with the District Court's order and

deleted all claims except Ground Four as it related to the admission of certain hospital records.

Docket No. 29.[3]  McLaughlin filed a memorandum in support of his Petition on November 2,

2012.  Docket No. 41.  The Respondent filed an opposition on January 22, 2013.  Docket No. 45.

McLaughlin filed five additional motions: (1) motion for summary judgment (Docket No.

40); (2) motion for preliminary injunction to give relief to petitioner from the sentence ordered

by Judge Barrett (Docket No. 42); (3) motion for declaratory judgment (Docket No. 44); (4)

motion for Respondent to provide petitioner with proof that Massachusetts, Route 3 Exit 15 is

the Rockland Exit at Home Depot, and Exit 15 is the Route 228 Exit (Docket No. 46); and (5)

motion for court order to provide court stenographer's copy of trial transcripts from January 14,

---

[3] The Court had ordered McLaughlin to comply with its order by October 2, 2012.
Docket No. 25.  On September 28, 2012, the District Court entered an order dismissing the case.
Docket No. 26.  On October 1, 2012, McLaughlin filed a motion to delete all claims except
Ground Four, as ordered by the District Court.  Docket No. 29.  The District Court vacated the
dismissal on October 4, 2012.  Docket No. 32.

2009 (Docket No. 47).

II.      FACTUAL BACKGROUND[4]

The Massachusetts Appeals Court summarized the underlying facts of McLaughlin's

offenses as follows:

> *Background.* The Commonwealth built its case upon the testimony of civilian
> witness Sherry Goss, State Troopers Daniel Crespi and Matthew Waples, and
> toxicologist Kerri Donovan. The defendant did not present any witnesses.
>
> 1. *Testimony of Sherry Goss.* Goss finished her evening work shift in Boston at
> approximately 1:00 A.M. on October 25, 2005, and began her drive home to
> Brockton. As she moved southward on Route 93, she observed an automobile
> randomly alternating its speed and changing lanes. The car appeared to be a silver
> Mercedes–Benz.
>
> The car struck a concrete barrier in the middle of the highway, and ricocheted to
> the right across all of the traffic lanes. As it continued southward onto Route 3,
> Goss called 911 by cellular telephone and reported the accident. The car
> continued to change speeds and shift lanes, and eventually slowed to a speed of
> approximately twenty miles per hour.
>
> As Goss passed it, she read the car's license plate number. The driver appeared to
> be a male. She again called 911 and reported the license plate number to the
> dispatcher. She was unsure of the last digit of the number and gave the dispatcher
> two possibilities. Shortly afterward she left the highway.
>
> 2. *Testimony of Troopers Crespi and Waples.* Crespi received a dispatch at about
> 2:45 A.M. on October 25, 2005. As a result, he drove to Route 3 South. He was
> looking for a Mercedes–Benz sedan with a specific license plate number traveling
> in the southbound lanes. As Crespi reached an overpass above Route 3, he saw a
> sedan driving north in the southbound lanes of Route 3. He turned on his lights
> and siren and drove onto Route 3 North. Trees and bushes growing in the median
> blocked his view of the southbound lanes. He turned left into a cutout in the
> median and emerged onto Route 3 South. Before proceeding southward, he
> looked down the lanes and did not see a car traveling in the wrong direction. He
> proceeded several hundred feet southward and saw a Ryder truck stopped in the

---

[4] Absent clear and convincing evidence to the contrary, the recitation of the facts by the
Massachusetts Appeals Court is presumed to be correct.  See 28 U.S.C. § 2254(e)(1); Gunter v.
Maloney, 291 F.3d 74, 76 (1st Cir. 2002); Evans v. Thompson, 518 F.3d 1, 3 (1st Cir. 2008).

median.

Crespi pulled to the side of the highway, approached the truck on foot, and spoke with the driver. As he did so, he noticed another vehicle on the opposite side of the highway. It was straddling the breakdown lane and an adjacent embankment. As he crossed the highway toward the car, he radioed dispatch to report an accident.

The driver of the car, whom Crespi identified in court as the defendant, was unconscious. Crespi checked the defendant's vital signs; he had a pulse and was still breathing. His breath carried a strong odor of alcohol. The defendant's automobile was a gray Mercedes–Benz that had sustained serious damage to its passenger side. The make, color, and license plate number matched the description of the vehicle for which Crespi was looking when he drove onto Route 3.

Trooper Waples arrived shortly afterward. He had responded to the scene after receipt of a radio transmission from Crespi reporting the accident. Previously, Waples had received the same dispatch information as Crespi and had been searching Route 3 South for a silver or gray Mercedes–Benz with a specific license plate number. Upon arrival, Waples spoke with Crespi, approached the defendant's vehicle, and observed its make, color, and license plate number, all of which matched the description of the vehicle relayed to him by dispatch earlier. Waples also checked the defendant's vital signs and smelled a strong odor of alcohol on the defendant's breath. Waples identified the defendant in court.

Emergency medical personnel then arrived and, with the "jaws of life," removed the defendant from his vehicle. They transported him to South Shore Hospital. Waples investigated the accident scene and then drove to the hospital to inquire whether medical personnel had tested the defendant's blood. He spoke with both doctors and nurses who were treating the defendant. He then returned to his barracks and drafted charges against the defendant for OUI and for negligent operation.

3. *Testimony of toxicologist Kerri Donovan.* At the conclusion of the testimony by the troopers, pursuant to G. L. c. 233, § 79, the Commonwealth introduced in evidence a copy of the defendant's hospital records and a signed form from a South Shore Hospital record keeper certifying "that the attached medical record is a true and accurate copy of the original documents." The records contained a toxicology report. The Commonwealth then called toxicologist Donovan to explain the significance of the report. She described the process by which blood analysts use a person's serum alcohol level to calculate blood alcohol content. From the defendant's hospital toxicology report, she described his ethanol serum level as 303 milligrams per deciliter. From that datum, she calculated that the

defendant's blood alcohol content by weight on the night of the accident to have been between .256 and .270 percent, a level more than three times the legal limit. See G. L. c. 90, § 24 (1) (a) (1)., first par.

Commonwealth v. McLaughlin, 79 Mass. App. Ct. at 671-673, SA 194-195.

III.   DISCUSSION

McLaughlin contends that his Sixth Amendment right to confrontation was violated when the trial court admitted a certified copy of his medical records showing that his alcohol blood level was between .256 and .270 percent, where the keeper of the hospital records, who signed the authenticating certificate, did not testify at trial.[5]  Petition at 10; Docket No. 43 at 3-14.  This Court disagrees.

A.   Habeas Corpus Standard Of Review

The Court liberally construes the Petition because McLaughlin is appearing pro se. Haines v. Kerner, 404 U.S. 519, 520-521 (1972).  McLaughlin may not obtain federal habeas relief under 28 U.S.C. § 2254(d) unless he can show that the SJC'S decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States."  28 U.S.C. § 2254(d)(1).  The "contrary to" prong is satisfied when the state court "applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases," Williams v. Taylor, 529 U.S. 362, 405 (2000), or if "the state court confronts a set of facts that are materially indistinguishable from a decision of [the Supreme

---

[5] In its opposition to McLaughlin's Petition, the Respondent addresses an ineffective assistance of counsel claim.  Docket No. 45.  However, that claim is not before the Court.  The District Court ordered McLaughlin to delete all claims in his Petition, except for the claims in Ground Four relating to the admission of the hospital records.  Docket No. 25.  McLaughlin complied.  Docket No. 29.  Although McLaughlin presented a claim of ineffective assistance of counsel in his petition for further appellate review, SA 206, no such claim is presented in Ground Four of the Petition.  See Petition at 10.

Court] and nevertheless arrives at a [different] result." <u>Id.</u> at 406.  The "unreasonable

application" prong is satisfied if the state court "identifies the correct governing legal principle

from [the Supreme Court's] decisions but unreasonably applies that principle to the facts of the

prisoner's case." <u>Id.</u> at 413.  In reviewing a case under Section 2254(d)(1), "an *unreasonable*

application of federal law is different from an *incorrect* application of federal law." <u>Id.</u> at 410

(emphasis in original).

      The AEDPA also allows relief from a state court judgment if that judgment is based on

an "unreasonable determination of the facts in light of the evidence presented in the State court

proceeding." 28 U.S.C. § 2254(d)(2).  "Under this standard, 'the state court's factual findings

are entitled to a presumption of correctness that can be rebutted only by clear and convincing

evidence to the contrary.'" <u>RaShad v. Walsh</u>, 300 F.3d 27, 35 (1st Cir. 2002) (citations omitted).

"Unless the petitioner can carry this heavy burden, a federal habeas court must credit the state

court's findings of fact." <u>Id.</u> (citations omitted).

      "If this standard is difficult to meet, that is because it was meant to be.  As amended by

AEDPA, § 2254(d) stops short of imposing a complete bar on federal court relitigation of claims

already rejected in state proceedings." <u>Harrington v. Richter</u>, __U.S. __, 131 S.Ct. 770, 786

(2011) (citations omitted).  However, in order to obtain habeas relief from a federal court, "a

state prisoner must show that the state court's ruling on the claim being presented in federal

court was so lacking in justification that there was an error well understood and comprehended

in existing law beyond any possibility for fairminded disagreement." <u>Id.</u>

B.      The Appeals Court Decision[6] Was Not Contrary To Or
        An Unreasonable Application Of Clearly Established Federal Law

McLaughlin is not entitled to habeas relief because the Appeals Court's decision was

neither contrary to nor an unreasonable application of federal law.[7]  The Sixth Amendment

states: "In all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with

the witnesses against him."  U.S. Const. amend. VI.  In Crawford v. Washington, the Supreme

Court held that the Confrontation Clause to the Sixth Amendment barred "admission of

testimonial statements of a witness who did not appear at trial unless he was unavailable to

testify, and the defendant had a prior opportunity for cross-examination."  Crawford v.

Washington, 541 U.S. 36, 53-54 (2004).

A critical part of the Crawford holding

is the phrase "testimonial statements."  Only statements of this sort cause the
defendant to be a "witness" within the meaning of the Confrontation Clause.  It is
the testimonial character of the statement that separates it from other hearsay that,
while subject to traditional limitations upon hearsay evidence, is not subject to the
Confrontation clause.

United States v. Soto, 720 F.3d 51, 57-58 (1st Cir. 2013) (quoting Davis v. Washington, 547

---

[6] The SJC denied McLaughlin's application for further appellate review and, thus, this
Court must "'look through to the last reasoned decision' to determine the basis for the state
court's holding." Junta v. Thompson, 615 F.3d 67, 71 (1st Cir. 2010) (quoting Malone v. Clarke,
536 F.3d 54, 63 n. 6 (1st Cir. 2008)).  Accordingly, this Court reviews the decision of the
Massachusetts Appeals Court. Id.

[7] Before the Appeals Court, McLaughlin also argued that the admission of the hospital
records violated state law. McLaughlin, 79 Mass. App. Ct. at 674.  That argument was not
presented to the SJC (see SA 206) and, therefore, was not properly exhausted.  See Clements v.
Maloney, 485 F.3d 158, 162 (1st Cir. 2007) (claim is not properly exhausted unless it is
contained "within the four corners of the [application for further appellate review to the SJC]").
In any event, this Court may not review a state court's decision regarding state law. Estelle v.
McGuire, 502 U.S. 62, 67-68 (1991).

U.S. 813, 821 (2006)).  "To rank as 'testimonial,' a statement must have a 'primary purpose' of

'establish[ing] or prov[ing] past events potentially relevant to later criminal prosecution."

Bullcoming v. New Mexico, __ U.S. __, 131 S. Ct. 2705, 2714 n. 6 (2011) (quoting Davis, 547

U.S. at 822).

     In Melendez-Diaz v. Massachusetts, 557 U.S. 305, 309-11 (2009), the Supreme Court

held that an affidavit reporting the results of the state's forensic drug analysis falls within the

"core class of testimonial statements," and the defendant must be afforded his constitutional right

to confront the analysts.  In finding that the admission of the certificate violated the

Confrontation clause, the majority rejected the argument that the certificates could be admitted

as business records.  See United States v. Cameron, 699 F.3d 621, 640 (1st Cir. 2012).  As

explained by the U.S. Court of Appeals for the First Circuit:

> Although the majority found that the certificates "[did] not qualify as business
> records," they held that even if the certificates were business records, "their
> authors would be subject to confrontation nonetheless."  The majority observed
> that although "[d]ocuments kept in the regular course of business *may ordinarily*
> be admitted at trial despite their hearsay status," this would not be so "if the
> regularly conducted business activity is the production of evidence for use at
> trial."  As the majority explained, "[b]usiness and public records are *generally*
> admissible absent confrontation *not* because they qualify under an exception to
> the hearsay rules, but because–having been created for the administration of an
> entity's affairs and not for the purpose of establishing or proving some fact at
> trial–they are not testimonial."  Thus, because the certificates at issue in
> Melendez-Diaz had been "prepared specifically for use at petitioner's trial," the
> court held that "[w]hether or not they qualif[ied] as business records," they were
> inadmissible unless their authors could be cross-examined.

Cameron, 699 F.3d at 640 (emphasis in original; internal citations omitted).  Similarly, in

Bullcoming, 131 S. Ct. at 2713, the Court held that a certified blood alcohol content report

(resulting from a warrant authorizing blood alcohol analysis) may be used against the defendant

only if the defendant has the opportunity to confront at trial the analyst who performed,

observed, or supervised the forensic examination.

Here, McLaughlin appears to challenge the admission of both the report contained in the medical records and the certification of authenticity of the medical records.  However, unlike in Crawford and Bullcoming, the blood analysis reports at issue here were part of a "series of routine tests, all of which hospital staff conducted for medical purposes."  McLaughlin, 79 Mass. App. Ct. at 676; SA 197.  With respect to the custodian's certification itself, as the Appeals Court pointed out, McLaughlin "impute[d] a testimonial character to the certification of the accuracy of the record," which was not supported by clearly established federal law:

> The certification form has some testimonial characteristics.  The keeper of the records signed the form under the pains and penalties of perjury, and created the form in response to a subpoena.  However, in Melendez-Diaz v. Massachusetts, the United States Supreme Court made an explicit exception for "a clerk's certificate authenticating an official record–or a copy thereof–for use as evidence."  The Court acknowledged that this type of affidavit is "prepared for use at trial," but held that the confrontation clause does not apply because such an affidavit merely "certif[ies] to the correctness of a copy of a record" and does not "furnish, as evidence for the trial of a lawsuit, [an] interpretation of what the record contains or shows, or . . . certify to its substance or effect."

> It is clear that the certification form in the present case belongs within this categorical exception.  The form certifies that the hospital furnished accurate copies of the defendant's medical records.  The form does not vouch for the substance of those records as an accurate representation of the defendant's condition on the night of the accident.

> In effect, the certification is doubly removed from a right of confrontation.  It constitutes a nontestimonial authentication of records of nontestimonial information.

McLaughlin, 79 Mass. App. Ct. at 677-678 (internal citations omitted); SA 197-198.  The Appeals Court identified the correct federal law and applied it to the facts in a manner that was neither contrary to nor an unreasonable application of federal law.  Accordingly, this Court recommends that the habeas petition be denied.

C.     McLaughlin's Motions For Injunctive And Other Relief

McLaughlin has filed two motions seeking injunctive relief.  Docket No. 31 (motion

seeking a "restraining order from the jurisdiction of Sheriff Joseph McDonald and Judge Barrett

Hingham District Court"), Docket No. 42 (motion for relief from sentence).  As the party

moving for a preliminary injunction, McLaughlin has the burden to show: (1) a substantial

likelihood of success on the merits; (2) a significant risk of irreparable harm if the injunction is

denied; (3) the harm he will suffer outweighs the harm to the respondent if the preliminary

injunction is granted; and (4) the preliminary injunction will promote the public interest.

McGuire v. Reilly, 260 F.3d 36, 42 (1st Cir. 2001).  This Court has recommended that the

District deny McLaughlin's Petition.  Therefore, the Court finds that McLaughlin has not shown

a likelihood of success on the merits and recommends denial of the motions seeking injunctive

relief.

McLaughlin has also moved for summary judgment and declaratory judgment.  Docket

Nos. 40, 44.  Again, as the Court has found that McLaughlin's claims have no merit, the Court

recommends that the District Court deny these motions as well.

In addition, McLaughlin moves for an order directing the Hingham District Court to

allow him access to the trial transcript. Docket No. 47.  However, he is not entitled to a transcript

as a matter of course.  See Ellis v. State of Maine, 448 F.2d 1325, 1327 (1st Cir. 1971).  He has

not explained the necessity for such a transcript.  Accordingly, the Court recommends that the

District Court deny the motion.

Finally, McLaughlin moves for an order directing the "Respondent to provide Petitioner

with proof that Route 3 Exit is in Rockland and Route 228 is at Exit 15."  Docket No. 46.  Again,

McLaughlin has not explained the necessity or relevance of this information and such information appears to have no bearing on the issues before the Court.  Accordingly, the Court recommends denial of that motion.

IV.    RECOMMENDATION

        For the foregoing reasons, I recommend that the District Judge assigned to this case deny McLaughlin's Petition for Writ of Habeas Corpus.  I further recommend that the District Judge deny McLaughlin's remaining motions.  See Docket Nos. 31, 40, 42, 44, 46, 47.

V.    REVIEW BY DISTRICT JUDGE

        The parties are hereby advised that under the provisions of Fed. R. Civ. P. 72(b), any party who objects to these proposed findings and recommendations must file specific written objections thereto with the Clerk of this Court within 14 days of the party's receipt of this Report and Recommendation.  The written objections must specifically identify the portion of the proposed findings, recommendations, or report to which objection is made, and the basis for such objections.  See Fed. R. Civ. P. 72 and Habeas Corpus Rule 8(b).  The parties are further advised that the United States Court of Appeals for this Circuit has repeatedly indicated that failure to comply with Fed. R. Civ. P. 72(b) will preclude further appellate review of the District Court's order based on this Report and Recommendation.  See Phinney v. Wentworth Douglas Hospital, 199 F.3d 1 (1st Cir. 1999); Sunview Condo. Ass'n v. Flexel Int'l, Ltd., 116 F.3d 962 (1st Cir. 1997); Pagano v. Frank, 983 F.2d 343 (1st Cir. 1993).

                                        /s/ Jennifer C. Boal
                                        JENNIFER C. BOAL
                                        United States Magistrate Judge